**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GALE BLACK,** *et al.***,** | |
| **Plaintiffs,** | |
| v. | Civil Action No. 11-1928 (JEB) |
| **RAY LAHOOD,** *et al.***,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

For many years Klingle Road was a thoroughfare in Northwest Washington that
connected areas to the east of Rock Creek Park with areas to the west.  A 0.7-mile segment of the
road that passed through the Park was closed in 1991 after deterioration rendered it unsafe for
automobile and other uses.  Although the District of Columbia in 2003 initiated a plan to reopen
the road, the plan was never fully realized.  Instead, in 2008, the D.C. Council passed a law
mandating that that strip of road be closed permanently to motor vehicles.  Three years later, the
Federal Highway Administration (FHWA) approved a proposal to construct a multi-use trail (for
pedestrians, cyclists, etc.) along the closed portion of Klingle Road.

Individual D.C. residents who live near the affected area have now filed suit alleging that
the approval of the trail project is unlawful and seeking declaratory and injunctive relief.  This
*pro se* action names as Defendants the following federal officials: Secretary of the Department of
Transportation Ray LaHood, Attorney General Eric Holder, U.S. Attorney for the District of
Columbia Ron Machen, and Mary Peters and Roberto Fonseco-Martinez of FHWA (Federal
Defendants).  In addition, Plaintiffs are suing Irvin Nathan, the Attorney General for the District,
and Terry Bellamy, the Director of the D.C. Department of Transportation (District Defendants).

The Federal and District Defendants have now each filed a separate Motion to Dismiss, arguing

that the Court does not have subject-matter jurisdiction over the case, and, even if it did, the

Complaint should be dismissed for failure to state a claim.  While those Motions were pending,

Plaintiffs moved for judgment on the pleadings.  Because the Court finds that Plaintiffs have

failed to satisfy the causality and redressability requirements of standing, it will dismiss the case

without prejudice for lack of subject-matter jurisdiction. Such a ruling, of course, renders

Plaintiffs' own Motion moot.

I.      **Background**

        A.   Statutory Background

        According to the Complaint, which the Court must presume true for purposes of these

Motions, Klingle Road runs between Rock Creek Park and the National Cathedral.  See Compl.,

Exh. 2 (Final Environmental Assessment (FEA)) at S.3.   In 1991, a 0.7-mile segment of the road

was closed to motor vehicles "due to severe deterioration of the roadway, headwalls, and

underlying stormwater management systems."  Id.   Since then, the road has remained unsafe for

vehicular as well as pedestrian and bicycle traffic because of "heaved and failed pavement as

well as extensive erosion beneath and adjacent to the road."  Id.; see also Compl., Exh. 4

(Finding of No Significant Impact (FONSI)) at 3.

        In 2003, the District passed the Klingle Road Restoration Act, D.C. law 15-39, § 2402,

D.C. Code § 9-115.11 (2003), mandating that the road be restored and reopened to public motor-

vehicle traffic.  Although the wheels were set in motion (so to speak) when the District published

a Notice of Intent in the Federal Register, the project was put on hold before reconstruction ever

began.  See FEA at S.3.  Then in 2008, the D.C. Council changed gears.  Id.  It passed the

Klingle Road Sustainable Development Amendment Act (codified as part of the Fiscal Year

2009 Budget Support Act of 2008, D.C. Law 17-219, §§ 6016-19, D.C. Code § 9-115.11),

requiring that the barricaded portion of Klingle Road "not be re-opened to the public for motor

vehicle traffic" "[n]otwithstanding any other law."  D.C. Code § 9-115.11 (emphasis added); see

also Compl., ¶ 46.  Instead, the Council mandated that a pedestrian and bicycle trail be

constructed along Klingle Road, including the barricaded portion that runs from "Porter Street,

N.W., on the east, to Cortland Place, N.W., on the west."  D.C. Law 17-219, § 6018.  The 2008

Act also provides for environmental remediation of the area, directing the D.C. Department of

Transportation (DDOT) to make necessary repairs to stormwater and sewage pipes so as to

"reduce or eliminate the runoff or discharge of storm water or sewage water into Klingle

Valley."  D.C. Law 17-219, § 6018(2).

   In accordance with the National Environmental Policy Act of 1969 (NEPA), the FHWA

and DDOT prepared an Environmental Assessment of the proposed "Klingle Valley Trail

Project" (Project), which was released on June 4, 2010.  See FONSI at 1, 10; see also 40 C.F.R.

1508.27(a).  After a comment period and a public hearing, a Final Environmental Assessment

(FEA) was issued for further public comment and ultimately signed on January 7, 2011.  See

Compl., ¶ 50.

   In addition to the environmental assessment, the agencies performed an analysis of

significant impact as required by NEPA.  See 40 C.F.R. 1508.27(a).  After evaluating both the

"context" and "intensity" of the Project, they concluded that the proposed multi-use trail along

Klingle Road would not have a "significant impact" as defined by NEPA.  See id., FONSI at 11.

On March 4, 2011, they issued a Finding of No Significant Impact explaining the basis for their

conclusion.  See Compl., ¶ 50.  Among other things, the FONSI discusses alternatives the

agencies considered and steps they would take to minimize any adverse effects of the chosen

Project.  See FONSI at 3-4, 7-8.  On May 6, 2011, a notice was published in the Federal Register advising the public that FHWA's approval of the Project was final and that any challenge to the action must be filed on or before November 2, 2011.  See 76 Fed. Reg. 26336.

      B.  The Current Action

      Plaintiffs are D.C. residents who live near the area that will be affected by the Project. See Compl., ¶¶ 9-16.  On November 1, 2011, they filed suit against the seven Defendants mentioned in the introduction – all in their official capacities.  Id., ¶¶ 17-24.  Plaintiffs allege that in approving the Project, Defendants failed to adequately comply with NEPA, the Federal Aid Highway Act (FAHA), and President's Executive Order 12989.  Compl., ¶¶ 1, 136.  They seek a court order declaring the Project's approval unlawful as well as an injunction prohibiting "FHWA from providing financial assistance" for the Project and DDOT from "contracting for, commencing, or continuing construction" of the Project "unless and until such time as FHWA has complied with all requirements of NEPA and FAHA."  Id., ¶ 5.

      On February 13, 2012, the Federal Defendants and District Defendants filed separate Motions to Dismiss.  See ECF Nos. 9, 10.  Both Motions argue that Plaintiffs lack standing and that the Complaint should therefore be dismissed for lack of subject-matter jurisdiction.  See Fed. Defs. Mot. at 3, District Defs. Mot. at 2.  District Defendants contend, in addition, that Plaintiffs have failed to state a claim against them because the APA "does not provide for a right of action against the government of the District of Columbia."  District Defs. Mot. at 2.  Similarly, Federal Defendants argue (in the alternative) that Plaintiffs have failed to state a claim with respect to three Defendants – Machen, Holder, and Fonseco-Martinez – because the Complaint does not link those Defendants to any challenged decision.  See Fed. Defs. Mot. at 12. On March 6, 2012, Friends of the Earth, Inc. and the Sierra Club filed a Motion to Intervene, which the Court granted, and the two intervenors simultaneously moved to dismiss, "incorporat[ing] by reference

the arguments, points, and authority set forth by the federal and District Defendants in their respective motions to dismiss…." ECF No. 14 (Motion to Intervene), Exh. 2 (Motion to Dismiss) at 1.  In addition to responding to these Motions, Plaintiffs have moved for judgment on the pleadings.  See ECF No. 18.

As the Court agrees that Plaintiffs lack standing, it need not reach any of the issues presented by any party beyond this threshold question.

## II.    Legal Standard

In evaluating Defendants' Motions to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  This standard governs the Court's considerations of Defendants' Motions under both Rules 12(b)(1) and 12(b)(6).  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 925-26 (D.C. Cir. 1984) (same).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction to hear their claims.  See Lujan v. Defenders of

Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24

(D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the

scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185

F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the

complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a

12(b)(6) motion for failure to state a claim."  Id. at 13-14 (quoting 5A Charles A. Wright &

Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider

materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of

jurisdiction."  Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, L.L.C. v.

E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case – a

dismissal under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the

pleadings"); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III.    Analysis

The primary argument set forth in Defendants' Motions is that Plaintiffs lack standing

because they have failed to show that their alleged injuries are (1) fairly traceable to Defendants'

conduct and (2) redressable by a favorable decision of this Court.  The Court will consider these

two elements of standing in turn.

Article III of the Constitution limits the power of the federal judiciary to the resolution of

"Cases" and "Controversies."  U.S. Const. art. III, § 2; see also Allen v. Wright, 468 U.S. 737,

750 (1984) (discussing case-or-controversy requirement).  "This limitation is no mere formality:

it 'defines with respect to the Judicial Branch the idea of separation of powers on which the

Federal Government is founded.'"  Dominguez v. UAL Corp., 666 F.3d 1359, 1361 (D.C. Cir.

2012) (quoting <u>Allen</u>, 468 U.S. at 750).  Because "standing is an essential and unchanging part of

the case-or-controversy requirement of Article III," <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.

555, 560 (1992), finding that a plaintiff has standing is a necessary "predicate to any exercise of

[the Court's] jurisdiction."  <u>Fla. Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996).

The doctrine of standing "requires federal courts to satisfy themselves that 'the plaintiff

has alleged such a personal stake in the outcome of the controversy as to warrant [<u>its</u>] invocation

of federal-court jurisdiction."  <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 493 (2009)

(emphasis in original) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 498-99 (1975)).  At its "irreducible

constitutional minimum," the doctrine requires a plaintiff to prove three elements: (1) a concrete

and imminent injury in fact, (2) a causal relationship between the injury and defendants'

challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable

decision.  <u>See Lujan</u>, 504 U.S. at 560-61; <u>see also</u> <u>Ord v. District of Columbia</u>, 587 F.3d 1136,

1140 (D.C. Cir. 2009).  Here, Defendants contend that Plaintiffs have failed to satisfy the second

and third prongs – namely, that their alleged injuries are "fairly traceable" to Defendants'

challenged actions and likely to be redressable by this Court.  <u>See Allen</u>, 468 U.S. at 751.

A.  <u>Causation</u>

Before the Court can assess what has caused the injuries Plaintiffs allege, it must first

examine what those injuries actually are.  The harms set forth in the Complaint can be grouped in

two main categories: (1) injuries from the closing of Klingle Road to motor-vehicle traffic and

(2) injuries from Defendants' failure to comply with procedural regulations.  With respect to the

former, Plaintiffs allege that the construction of the multi-use trail "will result in a de-facto

deprivation of vehicular access to a public road."  Compl., ¶ 2.  According to Plaintiffs, the

decision to block motor-vehicle access to Klingle Road will have numerous adverse

consequences.  First, it will impair Plaintiffs' "use, enjoyment, and appreciation of the Rock Creek Park, the streams, and scenery."  Id., ¶ 14 (noting, for example, that Plaintiff Eleanor Oliver, "a senior with mobility issues," would be "denied access and full use of this public right of way").  Second, it will increase traffic congestion on nearby streets, leading to greater pollution.  See id., ¶¶ 4, 14-15.  This would, in turn, expose "persons who live, attend school or work in areas adjacent to the new trail" to unnecessary toxins and contaminate the water "with attendant impacts on public health."  See id., ¶¶ 4, 88 ("The increase in road congestion caused by the unavailability of Klingle Road will result in pedestrian, biker and driver exposure to unnecessary pollutants."); see also id., ¶¶ 14-15.  Finally, it would decrease connectivity by depriving the public of a valuable traffic route between "the areas of East of Rock Creek Park with those West of the park."  Id., ¶ 2; see also id., ¶¶ 78, 81, 102, 137.

In sum, Plaintiffs themselves tie all of these harms to the closing of the road to motorized vehicles.  As a result, the critical question is whether it is actions by these Defendants – as opposed to actions by others – that have caused these harms.  And the answer is quite simple: of course not.  The D.C. Council, rather than any of these Defendants, closed Klingle Road.  None of the decisions complained of in this suit caused this harm.  As Federal Defendants correctly point out, the harms alleged "are not ones expected to occur from the Project.  Instead, they are occurring now – despite the fact that the Project has not been implemented – as a result of the Mayor's 1991 order to close the road and Plaintiffs' inability to drive on it since then."  Fed. Defs. Mot. at 5 (emphasis in original); see also Compl., ¶¶ 14 (Plaintiffs believe their health will suffer "as a result of the increased vehicular pollution that they now have to breathe as a result of the unavailability of the road") (emphasis added); 15 (Plaintiffs' ability to use Connecticut Ave., N.W., and Porter St., N.W., "has been impaired by the additional cars using that intersection due

to the unavailability of Klingle Road") (emphasis added); 77 (Project area "[i]n its present

state… remains an environmental hazard due to erosion and severe pollution at the southern end

of Rock Creek Park").

Assuming for purposes of these Motions that the closing of the road to motor vehicles

would have the negative effects described in the Complaint, these injuries clearly fail the

causation requirement, as it was not the challenged conduct of Defendants – but rather the

decision of the D.C. Council (which is, significantly, not named as a Defendant) – that led to the

prohibition on vehicular traffic on Klingle Road.  In order for an injury to have a sufficient

causal connection to a defendant's actions, the injury must be "fairly traceable to the defendant's

allegedly unlawful conduct."  Allen, 468 U.S. at 751 (emphasis added).  An injury that "results

from the independent action of some third party not before the court" will not suffice.  Id. at 757

(internal quotation marks and citation omitted); see also Fla. Audubon Soc'y, 94 F.3d at 663

("'[T]raceability' examines whether it is substantially probable that the challenged acts of the

defendant, not of some absent third party, will cause the particularized injury of the plaintiff."

(citations omitted)).

In this case, the action that led to Plaintiffs' alleged injuries – namely the closing of

Klingle Road to public motor vehicles – was undertaken first by the D.C. Mayor's office as an

emergency measure and later by the D.C. Council's enactment of a statute to that effect.

Defendants were not involved in either decision.  As Plaintiffs' own exhibit states, "The 0.7-mile

segment of roadway within Klingle Valley from Porter Street, NW to Cortland Place, NW was

barricaded to traffic in 1991 …." under the Mayor's emergency powers.  See FEA at S.3; see

also Compl., ¶ 27.  Although the D.C. Council passed a law directing that that portion of the road

be repaired and reopened to motor vehicles in 2003, it reversed course before the law was

implemented. <u>See</u> Compl., ¶¶ 41, 46. In 2008, before the road had been reopened, the D.C. Council passed a new law, requiring instead that the barricaded segment <u>remain closed</u> to the public for motor-vehicle traffic. <u>Id.</u> It is thus the D.C. Council that is ultimately responsible for any injuries arising from the prohibition on motor vehicle traffic. <u>Cf.</u> <u>Citizens Alert Regarding the Env't v. Leavitt</u>, 355 F. Supp. 2d 366, 373 (D.D.C. 2005) (injury not "fairly traceable" to Agency's conduct where "plaintiffs would have sustained their alleged injuries … notwithstanding the Agency's purported noncompliance with NEPA"); <u>Jones v. Louisiana State Bar Ass'n</u>, 738 F. Supp. 2d 74, 79 (D.D.C. 2010) (injury that flows not from defendants but "from the acts of third parties—that is, Congress, which enacted the legislation complained of" does not satisfy traceability requirement).

Plaintiffs acknowledge, furthermore, that the closing of the road – and its attendant ill effects – predated the actions challenged in this suit – namely, the steps leading to the approval of the Klingle Valley Trail project. The challenged actions by Defendants all took place after the 2008 Klingle Road Sustainable Development Amendment Act was passed. The initial and final Environmental Assessments were not issued until 2010 and 2011, respectively, <u>see</u> FONSI at 1, Compl., ¶ 50, and the FONSI was likewise finalized in 2011. <u>See</u> Compl., ¶ 50. The Federal Register notice indicating that the Project had been approved was published shortly thereafter, in May of 2011. <u>See</u> 76 Fed. Reg. 26336. The decision to close a segment of Klingle Road to vehicular traffic, therefore, occurred well before the alleged actions by Defendants that gave rise to this suit.

The language Plaintiffs use in the Complaint supports this conclusion as well. For instance, the Complaint states that individuals who reside near the barricaded portion of Klingle Road "<u>have suffered</u> and will continue to suffer injury in fact due to the Defendant's <u>past,</u>

<u>current, ongoing, and prospective</u> failure to … keep the road truly open for public vehicular travel." Compl., ¶ 10 (emphasis added).  The D.C. Circuit has made clear that the causation requirement of the standing doctrine is not satisfied under these circumstances.  <u>See</u> <u>Cherry v. FCC</u>, 641 F.3d 494, 498 (D.C. Cir. 2011) (where the complained-of injuries "'occurred before, existed at the time of, and continued unchanged after the challenged [agency] action,' they 'cannot be fairly traced to the [defendant's conduct]'") (citation omitted); <u>see also</u> <u>Fund for Animals v. Babbitt</u>, 2 F. Supp. 2d 570, 575 (D. Vt. 1997) (where conduct that caused plaintiffs alleged injuries was initiated before defendants' alleged NEPA violation and would have persisted without the challenged federal funding, plaintiff's claimed injuries not attributable to defendants' conduct).

In addition to harms arising from the closing of Klingle Road to motor vehicles, Plaintiffs allege procedural injuries.  Specifically, they contend that in evaluating the proposed multi-use trail, Defendants failed to consider a number of important factors including: "the transportation impact and the fiscal impact of revising or converting the dedicated function of the public street," Compl., ¶ 60; <u>see also</u> <u>id.</u>, ¶¶ 83, 94; the "historic nature of the road," <u>id.</u>, ¶ 63; "the dedicated, official, legally mandated land use of the property conveyed to the District in 1885," <u>id.</u>, ¶ 61; "storm-water management and pollution issues," <u>id.</u>, ¶ 76; and the alternative of a motor-vehicle road for public use.  <u>Id.</u>, ¶¶ 37, 71.

Procedural violations alone, however, are insufficient to establish injury for standing purposes.  A plaintiff asserting procedural harm must show that there is a "'substantial probability that the substantive agency action that disregarded a procedural requirement created a demonstrable risk … of injury to the particularized interests of the plaintiff." <u>County of Delaware, Pa. v. Department of Trasp.</u>, 554 F.3d 143, 148 (D.C. Cir. 2009) (quoting <u>Fla.</u>

Audubon Soc'y, 94 F.3d at 669).  In this case, Defendants' alleged procedural failings relate to

their approval of the Klingle Valley Trail project.  The concrete injuries alleged by Plaintiffs,

conversely, stem not from the decision to create a pedestrian and cycling trail along Klingle

Road, but rather from the (separate and) earlier decision to close the road to motor vehicles.

Because Plaintiffs have failed to demonstrate any probability – let alone a substantial one – that

the allegedly improper approval of the Project created a demonstrable risk of injury, the

procedural harms alleged are insufficient to establish standing.

      B.  <u>Redressability</u>

      Defendants concomitantly argue in their Motions that the alleged injuries suffered by

Plaintiffs are also not redressable by this Court.  <u>See</u> Fed. Defs. Mot. at 10-11, District Defs.

Mot. at 10-12.  The Court agrees.  In this case, causation and redressability are two sides of the

same coin.  For the same reasons that Plaintiffs' alleged injuries are not traceable to Defendants'

conduct, an order declaring Defendants' actions unlawful will not relieve Plaintiffs' suffering.

Even if the Court were to set aside Defendants' approval of the Project and enjoin them from

funding the construction of the trail, the barricaded portion of Klingle Road would still remain

closed to motor vehicles under the 2008 Act passed by the D.C. Council.  <u>See</u> D.C. Code § 9-

115.11; <u>see also</u> <u>County of Delaware</u>, 554 F.3d at 149 ("In order to determine redressability, the

court must examine 'whether the relief sought, assuming that the court chooses to grant it, will

likely alleviate the particularized injury alleged'") (citation omitted); 149-50 (injury not

redressable where the airspace redesigns allegedly responsible for the harm would remain in

place even if court overturned Defendant's action); <u>see also</u> <u>Tex. Alliance for Home Care Servs.</u>

<u>v. Sebelius</u>, No. 10-cv-747, 2011 WL 4005295, at *16 (D.D.C. 2011) ("Where, as here,

overturning a particular agency action would not alter the final outcome, redressability remains

unsatisfied.") (citing County of Delaware, 554 F.3d at 149-50).

       In order to satisfy the redressability requirement under these circumstances, Plaintiffs

would have to show that if the Court were to enjoin the construction of the trail and declare the

Project's approval unlawful, the D.C. Council would repeal the 2008 Act and allocate significant

funds to reconstructing the road, which is currently unsafe for driving.  See Dist. Defs. Mot at 12,

n.3; see also Physicians' Educ. Network, Inc. v. Dep't of Health, Educ., & Welfare, 653 F.2d

621, 623 (D.C. Cir. 1981) (to demonstrate redressability, plaintiffs must prove that the relief

requested "will not merely stay the hand of Congress but move it into action (by repealing the

legislation just passed)").  Plaintiffs have offered no grounds for this Court to make such a

determination.

       In any event, "[c]ourts have been loath to find standing when redress depends largely on

policy decisions yet to be made by government officials."  U.S. Ecology, Inc. v. U.S. Dept. of

Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  That is precisely the situation here as a court order

would do nothing to remedy Plaintiffs' alleged injuries unless the D.C. Council were to rescind

the 2008 Act and dedicate financial resources toward the reopening of Klingle Road to motor

vehicles.   The Court finds, accordingly, that Plaintiffs injuries are not redressable in this suit.

As Federal Defendants correctly point out, "The only conceivable judicial relief that would

enable Plaintiffs to escape the effects of [the 2008 Act] would require a challenge, not to the

federal decision-making process for the Klingle Valley Trail Project, but to the District of

Columbia statute."  Fed. Defs. Mot. at 11 (citing Physicians' Educ. Network, 653 F.2d at 624;

County of Delaware, 554 F.3d at 150).  Plaintiffs cannot use this action to circumvent legislation

passed by the D.C. Council.  Their unhappiness lies with the actions taken by those elected representatives.  If they seek relief, that is where they must direct their efforts.

Given the Court's ruling that it lacks subject-matter jurisdiction over this matter, it need not address other arguments, including the District Defendants' notable point that no action under the Administrative Procedure Act could even lie against them, see Walker v. Washington, 627 F.2d 541, 544 (D.C. Cir. 1980) (plaintiff could not assert claims against District pursuant to APA), and Plaintiffs' Motion for Judgment on the Pleadings, which, in addition to being procedurally premature, see Fed. R. Civ. P. 12(c) (party may seek judgment on the pleadings only "[a]fter the pleadings are closed"); Fed. R. Civ. P. 7(a) (pleadings include "a complaint and an answer"), is now moot.

## IV.    Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendants' Motions to Dismiss and denying Plaintiffs' Motion for Judgment on the Pleadings.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date:  August 9, 2012